UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN R. LOSSE,

    Plaintiff,

v.                                            Case No. 18-C-1481

CITY OF APPLETON, et al.,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Ryan Losse claims that his civil rights were violated when he was arrested for violating the terms of his probation and held in custody in the Outagamie County Jail for 10 weeks, despite the existence of video evidence completely exonerating him of the violation that led to his arrest. Plaintiff filed this action for damages under 42 U.S.C. § 1983 against two Appleton police officers, his probation officer and the officer's supervisor, the City of Appleton, and Outagamie County. The case is before the court on the defendants' motions for summary judgment. The court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. For the following reasons, the defendants' motions for summary judgment will be granted and the case dismissed.

**PRELIMINARY MATTERS**

As a preliminary matter, the defendants argue that their proposed findings of fact must be deemed admitted as uncontroverted for the purposes of summary judgment because Plaintiff's counsel failed to respond to them in accordance with Civil Local Rule 56. Under the local rules of the district, a party opposing a motion for summary judgment must file within 30 days of service of the motion "a concise response to the moving party's statement of facts" that consists of "a

reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph." Civil L.R. 56(b)(2) (E.D. Wis.). If a fact is disputed, the non-moving party must include a specific reference to an affidavit, declaration, or other part of the record that supports the claim that a genuine dispute exists as to that fact. *Id.* The local rules also state that any uncontroverted statements of fact will be deemed admitted for the purpose of deciding summary judgment. Civil L.R. 56(b)(4) (E.D. Wis.).

Plaintiff's counsel did not file any responses to the defendants' proposed finding of fact when he filed his response to the motions. On April 2, 2019, 4 days after the defendants filed their reply briefs, Plaintiff's counsel filed a response to the defendants' proposed findings of fact. The City of Appleton, Sergeant West, and Officer Taschner (the Appleton Defendants) filed a motion to strike Plaintiff's responses on April 9, 2019, because they are untimely and for failing to comply with the local rules. To date, no response has been filed to the motion to strike.

The motion to strike is granted. Failure to file a response to a motion is itself grounds to grant it under the local rules. Civil L.R. 7(d) (E.D. Wis.) ("Failure to file a memorandum in opposition to a motion is sufficient cause for the Court to grant the motion."). Moreover, even now, Plaintiff has offered no reason for his failure to respond to the defendants' proposed findings of fact. To allow the late filing absent any showing of good cause would likely add to the defendants' burden by requiring revision and refiling of their replies. Absent any explanation why the defendants should be forced to do so, the motion to strike will be granted and the defendants' proposed findings of fact will be deemed admitted for purposes of deciding the pending motions. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) ("We have . . . repeatedly upheld the strict enforcement of [local] rules, sustaining the entry of summary judgment when the

2

non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts."); *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809–10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with [the local rules], the court chooses to ignore and not consider the additional facts that a litigant has proposed.").

## BACKGROUND

At approximately 1:15 a.m. on June 21, 2017, Sergeant West and Officer Taschner of the Appleton Police Department were dispatched to investigate a complaint about a suspicious vehicle that had been running outside a home for 45 minutes to an hour. The caller did not know if the car was occupied, but claimed there had been an ongoing problem with people passing out in the their vehicles in that area. The officers located the vehicle, a red Mitsubishi Eclipse, in the driveway to the rear of the residence at 725 East Byrd Street, and observed a male occupant asleep in the driver's seat with what appeared to be a pipe for smoking methamphetamine in his hand. The officers knocked on the car's window to get the occupant's attention. When the occupant awoke, he looked around, ignored the officers' commands to turn the vehicle off, backed the car down the driveway and fled. Appleton police officers initially pursued the vehicle but ultimately aborted their pursuit due to safety concerns. A Grand Chute police officer also pursued the vehicle at one point within his jurisdiction but ultimately had to call off his pursuit as well for safety concerns.

West remained at the residence and attempted to see if anyone was home. Nobody answered West's repeated knocking on the door. Dispatch provided West with a phone number for the homeowner, Linda Jeanty, and West contacted her. Jeanty, who was not home at the time, told

3

West that her son, Plaintiff Ryan Losse, lived with her at that address and that she did not believe the Mitsubishi Eclipse belonged to her son.

Plaintiff was serving a 24-month term of probation for one count of possession of methamphetamine at the time. West was able to pull up a photo of him using the Department of Corrections (DOC) offender locator database. Both West and Taschner viewed the photo of Plaintiff in the database and concluded that Plaintiff had been the driver of the red Mitsubishi Eclipse. Based on his identification of Plaintiff as the driver of the vehicle, West requested a warrant for his arrest for one count of resisting or obstructing an officer. West also called the DOC's after-hours telephone number. In response to requests from both the Appleton Police Department and the Grand Chute Police Department, an on-call DOC supervisor for the DOC Division of Community Corrections (DCC) issued an apprehension request for Plaintiff the same day. The DOC DCC also notified Plaintiff's probation agent, Chad Corrigan, that it had issued an apprehension request for Plaintiff.

On June 22, 2017, the Lake Winnebago Area Metropolitan Enforcement Group conducted a search of Plaintiff's residence as part of its investigation of his brother Robert—who was also on supervision at the time and living in Jeanty's house—based on information that Robert was selling methamphetamine. The search was conducted pursuant to 2013 Wisconsin Act 79, which authorizes law enforcement to search the residence of a person on parole, probation, or extended supervision, based on reasonable suspicion that the person is committing, is about to commit, or has committed a crime or violation of a condition of supervision. During their search, investigators found methamphetamine in plain sight in Robert's room. In Plaintiff's bedroom they also found 13 baggies with the corners cut out of them, and one corner-cut baggie with residue that later tested

positive for methamphetamine, in the trash can. Investigators also found a black air gun, the orange tip of which had been painted over in black, on a shelf in Plaintiff's room. The conditions of Plaintiff's supervision prohibited him from possessing drug paraphernalia and a firearm and/or any other weapon without obtaining permission from his probation agent. After the search, the investigators contacted Appleton Police who proceeded to arrest Plaintiff pursuant to the earlier-issued apprehension request. Once Corrigan was notified of Plaintiff's arrest, he sent Outagamie County Jail an order to detain Plaintiff.

Corrigan met with Plaintiff at the jail on June 22, 2017. Plaintiff denied involvement in the car chase and told Corrigan that a person with the first name Lee had been driving a red Mitsubishi Eclipse on the evening in question. Corrigan then proceeded to review West's police report that explained how the officers viewed the photo of Plaintiff from the DOC's offender locator database to identify the occupant of the vehicle. Corrigan also received a telephone call from one of the investigators who conducted the search of Jeanty's home. The investigator informed Corrigan about the contraband found in Plaintiff's bedroom and also informed him that the Mitsubishi Eclipse had a history of being at the residence and was seen being driven by Lee Carter, as well as other individuals. On June 23, Corrigan asked the DOC's jail liaison to take another statement from Plaintiff regarding Lee Carter and Plaintiff's knowledge of the contraband found in his room. In a signed written statement Plaintiff denied any knowledge of the drug paraphernalia, denied being the driver of the Mitsubishi Eclipse, asserted that Lee Carter was the person who had been in the driveway in the vehicle, and admitted to possessing the air gun.

On June 24, 2017, West and Taschner went to the Outagamie County Jail to speak with Plaintiff. West read Plaintiff his Miranda rights, but discontinued the interview after Plaintiff

5

informed the officers that he had an attorney, and simply gave Plaintiff their contact information to pass along to his attorney so that his attorney could contact them.

During his investigation into Plaintiff's alleged violation of the conditions of his supervision, Corrigan spoke with the probation agents for Plaintiff's brother Robert and Lee Carter. In a signed written statement Carter denied any involvement in the police pursuit. Corrigan also spoke with Sergeant West who informed him how he and Taschner verified Plaintiff was the individual involved in the pursuit—by reviewing his DOC photograph and meeting with him at the jail.

Based on the information he had gathered, Corrigan initiated revocation proceedings against Plaintiff on July 6, 2017, and staffed the case with his supervisor, Roger Neveau. Plaintiff was served with, among other things, a notice of violation alleging that he violated the terms of his probation by leading officers on a high-speed pursuit, possessing drug paraphernalia in his bedroom, and admitting that he possessed an air gun.

A criminal complaint charging Plaintiff with felony Fleeing/Eluding an Officer, in violation of Wis. Stat. § 346.04(3), and Resisting/Obstructing an Officer, in violation of Wis. Stat. § 946.41, both as a repeater, was issued on July 17, 2017. Plaintiff made an initial appearance in the criminal matter on July 18, 2017, and the Commissioner set a preliminary examination within 20 days and a $500 cash bond. On July 31, 2017, Plaintiff waived his preliminary hearing and the court found probable cause that he had committed the acts charged against him. The court bound the case over for an arraignment scheduled for August 15, 2017. On August 8, 2017, Corrigan submitted an Amended revocation summary indicating that criminal charges were filed against Plaintiff based on his alleged involvement in the police pursuit.

A final revocation hearing was initially scheduled for August 7, 2017, and then rescheduled for August 29, 2017, because West was unavailable on August 7. The day before the final revocation hearing, West and Taschner reviewed the body camera footage from their June 21, 2017 encounter with the Eclipse driver. West also went to the Outagamie County Jail to view Plaintiff's tattoos. West determined that the person in the vehicle at the time of the incident did not have the same forearm tattoos Plaintiff had. The officers informed Corrigan of their conclusion that Plaintiff was not the individual they had encountered in the car on June 21, 2017, based upon their review of the body camera footage. This was the first time that Corrigan had heard about the body camera video. Based on this new information, and because the drug paraphernalia and weapons violation carried a recommended sanction of 5-59 days under DOC guidelines, whereas Plaintiff had been in custody for 68 days, the DOC DCC withdrew its revocation recommendation on August 29, 2017. On August 29, 2017, Corrigan provided Outagamie County Jail with a cancellation of the order to detain. In addition, Outagamie County Assistant District Attorney Tombasco moved the court to dismiss the charges against Plaintiff stemming from the June 21, 2017 allegations of fleeing and obstructing on August 29, 2017, at which time Plaintiff was released from custody.

On September 21, 2018, Plaintiff filed this action against Outagamie County, the City of Appleton, Sergeant Tyrell West and Officer Jack Taschner of the Appleton Police Department, and probation and parole agent Chad Corrigan and his supervisor Roger Neveau of the Wisconsin Department of Corrections. Under the heading "MANY VIOLATIONS OF THE PLAINTIFFS [sic] CIVIL RIGHTS AGAINT [sic] WRONGFUL SEARCH SEIZURE AND IMPRISONMENT AS WELL AS A CLEARLY EXCESSIVE AND UNDLY [sic] HARSH SENTENCE," Plaintiff alleges:

7

> Losse's detention was not based on his involvement in any crime, his detention was not based on required cause to justify incarceration. These are *clear violations of the Plaintiffs* [sic]*4th and 8th Amendment rights* against warrantless seizures not based upon probable cause and a [sic] unduly harsh sentence as he was incarcerated without cause. Factually another person committed the crime for which he was incarcerated.

Dkt. No. 11 at 5, ¶ 3 (italics and underline original). Motions for summary judgment were promptly filed on January 7, 2019, by the State Defendants (Corrigan and Neveau), Dkt. No. 25, Outagamie County, Dkt. No. 29, and the Appleton Defendants (City of Appleton, Sergeant West, and Officer Taschner), Dkt. No. 32. Plaintiff's time to respond was extended to March 15, 2019. The motions are now fully briefed.

## LEGAL STANDARD

Summary judgment should be granted when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, the time and expense of the parties and the court should not be wasted on a trial when there are no material facts in dispute, one party is entitled to judgment on those facts, and thus there is nothing to try. In deciding a motion for summary judgment, all reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoted source and internal quotation marks omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to

8

the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

Plaintiff alleges that all of the remaining defendants violated his Fourth and Eighth amendment rights because he was detained without probable cause for a crime that another person committed. Plaintiff also argues that the defendants were not diligent in investigating or turning over the body camera footage that shows he was not the driver of the Eclipse that evaded police officers.

**A.     Outagamie County**

Outagamie County contends that all claims against it should be dismissed because Plaintiff has failed to plead a municipal liability claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). A municipality can "be held liable under § 1983 only for its own violations of federal law." *Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010) (citing *Monell*, 436 U.S. at 694). To invoke *Monell* liability, a plaintiff must demonstrate that there was an "'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" *Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016) (quoting *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016)).

Plaintiff's claims against Outagamie County will be dismissed because he has failed to identify any official policy, widespread custom, or action by an official with policy-making authority associated with Outagamie County that was the source of his confinement. Outagamie County took no part in the events that led to Plaintiff's detention, thus it is not responsible for any

of those events. *See Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) ("[S]ome causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery."). Indeed, it is difficult to see why the County was sued in the first place, and Plaintiff has offered no argument in response to its motion for summary judgment.

Persons detained because of suspected probation violations "are entitled to two separate hearings under the due process clause of the Fourteenth Amendment: a preliminary hearing soon after the individual's initial detention and a final hearing before a decision is made on revocation." *Larry v. Dep't of Corr.*, No. 06-C-223-C, 2006 WL 1374034, at *2 (W.D. Wis. May 12, 2006). "The right to a preliminary hearing is not absolute," and "exceptions exist." *Id.* at *2–3. A preliminary hearing need not be held if "[t]he offender has given and signed a written statement which admits a violation." Wis. Admin. Code DOC § 331.05(2)(b). If the violation has been admitted in writing, the offender may be detained pending a final revocation hearing. *See Graffree v. Shelton*, No. 09-CV-167, 2011 WL 839530, at *6 (E.D. Wis. Mar. 7, 2011); *Faheem-El v. Klincar*, 841 F.2d 712, 725 (7th Cir. 1988) ("[I]f probable cause was found to exist at the preliminary parole hearing, the parolee could be incarcerated pending the final revocation hearing."). Because Plaintiff admitted in writing that he possessed the air gun, a preliminary hearing was not required and his continued detention by Outagamie County until his final revocation hearing was appropriate.

Further, Outagamie County's 10-week detention of Plaintiff was reasonable. A final revocation hearing must be held within a reasonable amount of time after the offender is taken into custody. *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972). Although Plaintiff was released prior to

10

having his hearing, it was scheduled to be held within a reasonable amount of time. *Id.* (a lapse of two months is not unreasonable); *U.S. v. Scott*, 850 F.2d 316, 320–22 (7th Cir. 1988) (thirteen-month delay reasonable). More importantly, Outagamie County's detention of Plaintiff at its jail was at the direction of the DOC's order to detain and the state court's order of detention subject to bail. The same day that the order to detain was cancelled by DCC and the state charges dismissed, Outagamie County released Plaintiff. Plaintiff has failed to established that Outagamie County's detention of him violated his constitutional rights.

The facts also reveal that Outagamie County did not have access to any of the evidence that established Plaintiff was not the driver of the Mitsubishi Eclipse, or that even if it did have access that it has a policy or custom of withholding such information. Consequently, Outagamie County's motion for summary judgment is granted and all claims against it are dismissed.

**B.     The Appleton Defendants**

    **1.     Sergeant West and Officer Taschner**

Sergeant West and Officer Taschner assert that they are entitled to qualified immunity and are not liable for misidentifying Plaintiff as the driver of the vehicle and issuing an apprehension request. "Governmental actors performing discretionary functions enjoy 'qualified immunity,' meaning that they are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013) (quoting *Estate of Escobedo v. Bender*, 600 F.3d 770, 778 (7th Cir. 2010)). "The qualified immunity analysis therefore traditionally involves a two-part inquiry. The first question is whether the defendants' conduct violated a constitutional right. The second question is whether that particular constitutional right

11

was "clearly established" at the time of the alleged violation." *Id.* at 1090 (internal citations omitted).

West argues that he did not violate Plaintiff's constitutional rights because he had probable cause for issuing the apprehension request for Plaintiff. "Probable cause for an arrest exists if, at the time of the arrest, the facts and circumstances within the police officer's knowledge were sufficient to warrant a reasonable belief that the suspects had committed, were committing, or were about to commit a crime." *Wollin v. Gondert*, 192 F.3d 616, 622 (7th Cir. 1999). "'In recognition of the endless scenarios confronting police officers in their daily regimen, courts evaluate probable cause not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard.'" *Id.* at 623 (quoting *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994)).

Here, West had probable cause to issue the apprehension request because the information available to him at the time supported his belief that Plaintiff was the driver of the Mitsubishi Eclipse. There is no question that the driver of that vehicle's actions were criminal. The driver was evading police officers and driving so dangerously that twice officers that were in pursuit of the fleeing vehicle had to end the pursuit for safety reasons. After the vehicle sped off, Sgt. West spoke with the owner of the home where the car had been idling in the driveway, Plaintiff's mother, who informed West that Plaintiff was living there with her. After West learned that Plaintiff was on probation, he pulled up a photo of him in the DOC database, and both he and Taschner viewed the photo and agreed that the photo of Plaintiff matched the driver of the vehicle. Plaintiff offers no evidence that suggests they were acting in bad faith. The video evidence of the driver of the

Mitsubishi Eclipse is of a person with Plaintiff's general characteristics and size. He is wearing a hat, and the fact that both officers believed he was Plaintiff suggests they were acting in good faith. It was dark outside and though they shined a flashlight on him, he quickly started the vehicle and backed away. Officer error does not amount to a constitutional violation. When West saw Plaintiff the next day, he still thought Plaintiff was the driver. West did not interview Plaintiff because he was represented by counsel. It was not until the officers viewed the body camera footage in preparation for Plaintiff's final revocation hearing that they noticed the tattoos on his forearms and the absence of tattoos on the driver. They immediately notified Plaintiff's probation agent and the assistant district attorney handling the criminal case. Though mistaken, their initial identification of Plaintiff as the driver of the Mitsubishi Eclipse was more than sufficient to support a finding of probable cause that Plaintiff was the driver of the vehicle. Consequently, the issuance of the apprehension request did not violate Plaintiff's constitutional rights.

Plaintiff also asserts a constitutional claim against West and Taschner for their alleged failure to disclose exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 87–88 (1963) (state violates due process by failing to disclose material exculpatory evidence to defense in time for defendant to make use of it). "A police officer's failure to disclose exculpatory evidence to a prosecutor may foreseeably result in a violation of the accused's due process rights under *Brady*." *Cairel v. Alderden*, 821 F.3d 823, 832 (7th Cir. 2016). "To prevail on a civil *Brady* claim against an officer, an accused must show that (1) the evidence is favorable to him; (2) the evidence was concealed by the officer; and (3) the concealed evidence resulted in prejudice." *Id*. "Prejudice requires proof that the failure to disclose caused a deprivation of the accused's liberty." *Id.*

Plaintiff's *Brady* claim against West and Taschner fails for two reasons: 1) there is no evidence that the body camera footage was intentionally concealed by the officers, and 2) the body camera footage did not result in any prejudice to Plaintiff. First, there is no indication in the record that the officers concealed the existence of the body camera footage from Plaintiff or prevented Plaintiff from requesting it. Second, Plaintiff cannot demonstrate any deprivation of liberty as a result of any alleged failure to disclose the evidence as the body camera footage was made known to Plaintiff the same day it was found that the footage revealed Plaintiff was not the driver. This disclosure was made prior to any criminal conviction or final revocation hearing, and thus did not constitute a *Brady* violation. *See Armstrong v. Daily*, 786 F.3d 529, 552 (7th Cir. 2015) ("The Prosecution may fulfill its *Brady* obligation through disclosure in the time leading up to or sometimes even during trial."). In addition, Plaintiff was not detained solely for allegedly being the driver of the Eclipse, but also on the basis of violations of his supervision for unrelated actions that were discovered through an unrelated investigation. Consequently, Plaintiff cannot establish that he was prejudiced. As a result, the Appleton defendants' motion for summary judgment is granted with respect to Sergeant West and Officer Taschner.

### 2. City of Appleton

As to the City of Appleton, the claims against it will be dismissed because Plaintiff has failed to establish that it violated Plaintiff's constitutional rights. Plaintiff's claim that "[i]t is [a] common practice of [the Appleton Police Department] and the City of Appleton to charge and submit to prosecutors documents that are incriminating while foregoing the timely disclosure of digital evidence that contradicts the same," Pl.'s Resp., Dkt. No. 46 at 10, is wholly unsupported by the evidentiary record. Plaintiff has presented no evidence supporting this claim or identified

any specific policy or custom. Liability against a municipality under § 1983 can only be established by showing that a constitutional violation is the result of an "'official policy, widespread custom, or action by an official with policy-making authority [that] was the 'moving force' behind his constitutional injury.'" *Daniel*, 833 F.3d at 734 (quoting *Dixon*, 819 F.3d at 348). As Plaintiff cannot establish that his constitutional rights were violated, let alone the existence of a policy or custom that the City of Appleton intentionally withholds exculpatory evidence, the Appleton defendants' motion for summary judgment is granted with respect to the City of Appleton.

**C.     Rodger Neveau, Chad Corrigan**

Corrigan and Neveau assert that the issuance of the order of detention for Plaintiff and the probation hold placed on Plaintiff were lawful and that they did not withhold exculpatory evidence. As neither Neveau nor Corrigan were personally involved in the initial car chase, issuance of the apprehension request, the search of Plaintiff's residence, or taking him into custody they are not liable for any of those actions. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) ("'Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.'" (quoting *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983))).

Turning to Corrigan's issuance of the order of detention for Plaintiff, the wrongful detention of a person by state agents can constitute an unreasonable seizure of a person in violation of the Fourth Amendment. *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003). "[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." *Bailey v. United States*, 568 U.S. 186, 192 (2013).

The information available to Corrigan at the time supports a finding that he had probable cause to issue the order to detain Plaintiff. Corrigan had received information from law enforcement that identified Plaintiff, albeit mistakenly, as the driver of the Eclipse that was involved in a police chase that ultimately had to be abandoned for safety reasons. More importantly, Plaintiff had just been arrested after drug paraphernalia and an air gun were found in a search of his room, possession of which violates his conditions of supervision. Consequently, because there was reason to believe that Plaintiff had violated the law by evading police in the Eclipse and violated the conditions of his supervision by possessing drug paraphernalia and a weapon, Corrigan's issuance of the order to detain Plaintiff satisfies the probable cause standard and did not violate his constitutional rights.

After Plaintiff was initially detained, Corrigan took further steps to investigate whether he was the driver of the Eclipse and whether he had violated the terms of his supervision. Corrigan read West's police report, wherein West detailed how he identified Plaintiff by viewing a photo of him in the DOC offender locator database, and spoke with Sgt. West who informed him that he and Officer Taschner went to the jail and confirmed Plaintiff was the driver. Corrigan also spoke to an investigator involved with the search of Plaintiff's bedroom who detailed the items discovered in Plaintiff's bedroom and informed Corrigan about the association of the Eclipse with Plaintiff's residence. Corrigan also spoke with Lee and Plaintiff, both of whom denied being the driver of the vehicle. Corrigan also obtained a written statement from Plaintiff in which he admitted to possessing the air gun in violation of the terms of his supervision. During Corrigan's investigation nobody mentioned the body camera footage to him, nor did he ever view it. Corrigan also discovered during the course of his investigation that Plaintiff faced criminal charges for his alleged

evasion of officers in the Eclipse. Based on his investigation, Corrigan submitted a revocation summary explaining the DOC's basis for its revocation recommendation and ensured that Plaintiff's defense counsel received a copy. These facts amply demonstrate that Corrigan had probable cause to believe Plaintiff violated the conditions of his probation. It was not until the day before Plaintiff's final revocation hearing that Corrigan learned from West after he reviewed the body-cam video in preparation for the hearing that Plaintiff was in fact not the driver of the vehicle. Upon discovering this information, Corrigan immediately notified Neveau, and withdrew their revocation recommendation, which was granted the next day on August 29, 2017. Neither Corrigan nor Neveau violated Plaintiff's constitutional rights through these actions.

## CONCLUSION

For the aforementioned reasons the defendants' motions for summary judgment (Dkt Nos. 25, 29, 32) are **GRANTED.** The Appleton Defendants' motion to strike (Dkt No. 52) is also **GRANTED**. The case is dismissed. The Clerk is directed to enter judgment accordingly.

Dated this  16th  day of May, 2019.

                                                          s/ William C. Griesbach
                                                          William C. Griesbach, Chief Judge
                                                          United States District Court